UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| FAIR HOUSING CENTER OF CENTRAL INDIANA, INC.; and CAROLYN MCGUFFIN, <br><br> Plaintiffs, <br><br> v. <br><br> CAROLYN SMITLEY, individually and as trustee of THE SMITLEY FAMILY TRUST, <br><br> Defendants. | Case No. 1:16-cv-00880 |

**COMPLAINT**

### I. Introduction

1. This is a fair housing case. With the blessing of her doctors and the assistance of family, Carolyn McGuffin returned home to her apartment to recuperate after a bout of necrotizing fasciitis. McGuffin was home, but confined to a hospital bed. It was in that bed that Carolyn Smitley found her. Smitley manages the apartment building where McGuffin lived and owns it through the Smitley Family Trust.

2. On seeing McGuffin in her hospital bed for the first time, Smitley told McGuffin that the prior manager "should never have rented to you in that hospital bed." Smitley told McGuffin that "she belonged in a nursing home or a

facility." Smitley came back to McGuffin's apartment, without permission, day after day, demanding that McGuffin move out. When McGuffin didn't move out on her own, Smitley refused to accept McGuffin's rent and filed for eviction. At the eviction hearing, Smitley reiterated that she wanted McGuffin out—not for any breach of lease—but because she was disabled.

3. McGuffin reached out for help to the Fair Housing Center of Central Indiana. The Fair Housing Center, with assistance by the Indiana Legal Services, helped McGuffin beat the eviction and counseled her about her fair housing rights. The Fair Housing Center also investigated the Smitleys' other rental practices. They found a sign the apartment building reading "Adults Only," indicating that the Smitleys do not rent to families with children.

## II. Jurisdiction & Venue

4. This Court has subject-matter jurisdiction over this case under 28 U.S.C. § 1331 because McGuffin and the Fair Housing Center bring claims under the federal Fair Housing Act.

5. The Court has subject-matter jurisdiction over McGuffin's state-law claims under 28 U.S.C. § 1367 because the state-law claims arise from the same facts as the federal claims.

6. Venue is proper in this judicial district under 28 U.S.C. § 1391 because all parties reside here and all the relevant events took place here.

## III. Parties

7. **Plaintiff Carolyn McGuffin** is a woman residing in Plainfield, Indiana.

8. **Plaintiff Fair Housing Center of Central Indiana** is a private, non-profit dedicated to eradicating housing discrimination through education, outreach, counseling and enforcement.

9. **Defendant Carolyn Smitley** manages the apartment building at 5000 Southeastern Avenue in Indianapolis, Indiana. She is the trustee of the Smitley Family Trust, which also owns the 5000 Southeastern Avenue building.

### IV. Facts

10. In August 2014, Carolyn McGuffin moved into Apartment 8 at the Smitley Apartments, which are located at 5000 Southeastern Avenue in Indianapolis.

11. A few months later, McGuffin came down with necrotizing fasciitis.

12. Necrotizing fasciitis is a serious, flesh-eating infection, though it is neither contagious nor communicable. See *Necrotizing Fasciitis: A Rare Disease, Especially for the Healthy*, CENTERS FOR DISEASE CONTROL AND PREVENTION, http://www.cdc.gov/features/necrotizingfasciitis/ (last visited 4/6/16). Treatment involves removing diseased tissue. This leaves large wounds, often repaired via skin graft.

13. About three months after contracting the disease, McGuffin was released from the hospital and she returned to Apartment 8 to recuperate under the care of her physician. It was believed she would make a full recovery.

14. While recuperating, McGuffin was largely confined to a hospital bed. She could not take care of herself and required assistance to eat, bathe, and perform other daily tasks.

15. McGuffin's daughter-in-law and later her grandson stayed with her, acting as a caretaker. A local organization was delivering meals and McGuffin had regular visits from doctors and therapists. With the help of emergency medical technicians and an ambulance, she was able to get to doctor's appointments.

16. For several months, McGuffin recovered in Apartment 8 without incident.

17. Then, around August 2015, there was a change in management at the Smitley Apartments.

18. There had been a building manager named Tammy Jotson, who had originally rented to McGuffin. Jotson left, and Carolyn Smitley began managing the building.

19. Shortly after Smitley took over from Jotson, McGuffin's grandson left McGuffin's apartment. As he usually would, he left a sign on the door telling the service that delivered McGuffin's meals to "come on in." The grandson used the note because McGuffin was unable to answer the door herself.

20. Smitley saw the note and entered.

21. Smitley saw McGuffin in her hospital bed and said, "I don't like that note being on the door and I don't want you living here in a hospital bed."

22. Smitley also said "Tammy should not have rented to you in a hospital bed."

23. Over the next several weeks, Smitley entered McGuffin's Apartment again and again, demanding that McGuffin leave. Smitley told McGuffin

repeatedly that she was going to get McGuffin out, terrifying McGuffin and interfering with her recuperation.

24. Whenever Smitley entered Apartment 8, her tone was angry and demanding.

25. On one occasion Smitley encountered one of McGuffin's therapists at the apartment building. Smitley tried to get the therapist to give Smitley the phone number of McGuffin's doctor. The therapist refused.

26. On another occasion, Smitley was in McGuffin's apartment at the same time as one of McGuffin's doctors. Smitley tried to get the doctor to help Smitley get McGuffin sent to a nursing home or hospital but the doctor refused to speak with Smitley about McGuffin.

27. Over and over, Smitley would tell McGuffin that she should be "in a facility" or "in a nursing home," that she was "too sick to live here," and various other comments all focused on McGuffin's disability.

28. Finally, at the beginning of September, Smitley tried to evict McGuffin.

29. Smitley refused to accept McGuffin's rent for September, telling McGuffin that Smitley would keep McGuffin's security deposit as the September rent and that McGuffin had to leave.

30. Smitley filed an eviction action against McGuffin citing "nonpayment of rent/living conditions/refusal to leave" as the grounds for eviction.

31. About this time a disability rights advocate who had been helping McGuffin reached out to the Fair Housing Center of Central Indiana.

32. The advocate told the Fair Housing Center that "[Smitley] has told [McGuffin] she does not want anyone living in the apartments who is 'confined to a hospital bed' all day. [McGuffin] states that [Smitley] frequently harasses her to move and questions her ability to care for herself stating that she should live in a nursing home. [Smitley] has told [McGuffin] she needs to give her her doctor's phone number so [Smitley] can talk to the doctor about putting her in a nursing home."

33. First, the Fair Housing Center helped put McGuffin in touch with an attorney from Indiana Legal Services to defend McGuffin in the eviction action.

34. Then, the Fair Housing Center investigated, interviewing McGuffin, her caretakers, and visiting the Smitley Apartments.

35. At the building, the Fair Housing Center found an obvious sign of familial status discrimination:



36. The Fair Housing Center wrote a letter to Carolyn Smitley, informing her of their investigation and asking her to hold off on the eviction.

37. Smitley called the Fair Housing Center and said that "[McGuffin] needs to be in a facility until she can get well." Smitley refused to hold off on the eviction.

38. At the eviction hearing, Smitley again said that she wanted McGuffin out because McGuffin was disabled, saying that Smitley didn't want McGuffin living there with a hospital bed while sick.

39. The eviction court judge entered judgment in McGuffin's favor, directing Smitley to accept McGuffin's rent. Despite the court's order, Smitley routinely refused to take McGuffin's rent in the months following causing McGuffin to have to reach out to her legal services attorney and the Fair Housing Center for help.

40. Smitley's conduct hurt McGuffin.

41. McGuffin, in a fragile state as it was, had to suffer near daily harassment for almost two months and, with it, embarrassment, frustration, and distress. Then, when Smitley tried to evict her, she had to face the added stress of potentially losing her home and becoming, not just homeless, but homeless in an incredibly vulnerable condition. On top of that, she was worried about trying to find new housing which would be affordable and accessible to someone with disabilities; a difficult task in Indianapolis.

42. The Fair Housing Center was injured too. The Fair Housing Center lost the valuable staff time spent investigating the Smitley's discrimination and counseling McGuffin about her rights. Smitley's discrimination frustrated the Fair Housing Center's mission, which is to ensure equal housing opportunity across central Indiana.

## V. Claims

### A. Count I
### [Fair Housing Act]
### All Plaintiffs v. All Defendants

43. All preceding paragraphs are realleged here.

44. Carolyn Smitley has committed discriminatory housing practices because of disability and familial status, in violation of the federal Fair Housing Act, 42 U.S.C. §§ 3601-3617.

45. The Smitley Family Trust is vicariously liable for the discriminatory housing practices committed by Carolyn Smitley, its agent.

### B. Count II
### [Indiana Fair Housing Act]
### All Plaintiffs v. All Defendants

46. All preceding paragraphs are realleged here.

47. Carolyn Smitley has committed discriminatory housing practices because of disability and familial status, in violation of the Indiana Fair Housing Act, Ind. Code § 22-9.5-5.

48. The Smitley Family Trust is vicariously liable for the discriminatory housing practices committed by Carolyn Smitley, its agent.

### C. Count III
### [Negligence]
### All Plaintiffs v. All Defendants

49. All preceding paragraphs are realleged here.

50. The Smitley Family Trust negligently failed to train and supervise their agent, Carolyn Smitley, so as to ensure that she operated the 5000 Southeastern building in accordance with the federal Fair Housing Act and state landlord-tenant laws.

### D. Count IV
### [Trespass]
### Carolyn McGuffin v. All Defendants

51. All preceding paragraphs are realleged here.

52. McGuffin had lawful possession of Apartment 8 based on an month-to-month lease.

53. On multiple occasions Carolyn Smitley entered Apartment 8 without McGuffin's permission and without any other legal right to do so.

54. The Smitley Family Trust is vicariously liable for the trespasses committed by Carolyn Smitley, its agent.

### E. Count V
### [Interference with Possession]
### All Plaintiffs v. All Defendants

55. All preceding paragraphs are realleged here.

56. Carolyn McGuffin was entitled to possession of Apartment 8 without interference from Carolyn Smitley under Ind. Code § 32-31-5-6(c).

57. Smitley repeatedly interfered with McGuffin's possession of Apartment 8.

58. McGuffin is therefore entitled to relief under Ind. Code § 32-31-8-6.

59. The Smitley Family Trust is vicariously liable for the interference perpetrated by Carolyn Smitley, its agent.

### VI. Prayer

Wherefore, Fair Housing Center and Carolyn McGuffin pray for entry of a judgment that:

1. Awards compensatory damages;

2. Awards punitive damages;

3. Awards final injunctive relief to end the Smitleys' discrimination;

4. Declares under 28 U.S.C. § 2201 that the Smitley Defendants have violated the housing discrimination and related state laws;

5. Awards reasonable attorneys' fees and costs; and

6. Awards any other relief deemed just by the Court.

Dated: April 19, 2016.

Respectfully submitted,

s/ Thomas Kayes
Thomas Kayes
  Illinois Bar No. 6315461
BRANCART & BRANCART
77 West Washington Street, Suite 1313
Chicago, IL 60602
312 / 857-8665
Fax: 650/879-1103
tkayes@brancart.com

Thomas E. Crishon
  No. 28513-49
Melissa L. Keyes
  No. 30152-49
INDIANA PROTECTION & ADVOCACY SERVICES
4701 N. Keystone Ave., Suite 222
Indianapolis, IN 46205
317 / 722-5555
Fax: 317/ 722-5564
tcrishon@ipas.IN.gov
mkeyes@ipas.IN.gov
Attorneys for the Plaintiffs