UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| FAIR HOUSING CENTER OF CENTRAL INDIANA, INC.; and JESSICA CARLTON, in her capacity as personal representative of the estate of Carolyn McGuffin, | |
| Plaintiffs, | Case No. 1:16-cv-880-WTL-DML |
| v. | |
| CAROLYN SMITLEY, individually and as trustee of the Smitley Family Trust, | |
| Defendant. | |

**PLAINTIFFS' BRIEF IN SUPPORT OF THEIR
MOTION FOR DEFAULT JUDGMENT**

This is a fair housing case. Carolyn McGuffin leased a dwelling at the Smitley Apartments, owned by the Smitley Family Trust and managed by Carolyn Smitley. Smitley repeatedly demanded that McGuffin, who was largely confined to a hospital bed in the unit while recovering from an illness, leave the unit. Smitley maintained that McGuffin was "too sick" to live there and should be "in a nursing home." Smitley refused McGuffin's attempt to pay rent and then unsuccessfully filed for eviction for non-payment of rent. The Fair Housing Center investigated McGuffin's allegations. The investigation confirmed the discrimination and additionally revealed familial status discrimination, an "Adults Only" sign outside the front door.

Plaintiffs Fair Housing Center and McGuffin then filed this lawsuit. Plaintiffs have served written discovery. To date, Smitley has failed to answer that discovery. Plaintiffs' counsel made repeated attempts to follow-up in good faith on these missed discovery deadlines. Smitley's counsel failed to respond. Smitley also refused to communicate about

deposition scheduling. Plaintiff Fair Housing Center then filed and this Court granted a Motion pursuant to Federal Rules of Civil Procedure and Local Rules 37-1 compelling Smitley to respond to Fair Housing Center's outstanding discovery no later December 21, 2016, and to make herself available for a deposition between December 28, 2016, and January 13, 2017. As of the date of this filing, despite numerous good faith attempts by Plaintiffs' counsel to obtain compliance with the Court's Order, Defendant has failed to comply. Plaintiffs now seek an entry of default judgment pursuant to Federal Rules of Civil Procedure 37(b)(2)(A)(vi) and the inherent power of the Court.

## I. Background

### A. Preceding Motion to Compel Order

On April 19, 2016, Plaintiffs filed this action. (Compl., Dkt. 1). Instead of filing an Answer, Smitley requested additional time on May 18, 2016. (Mot. for Extension of Time, Dkt. 9). Though Smitley and Smitley's counsel were familiar with the charges, having previously answered substantially similar allegations in administrative complaints filed with the Indiana Civil Rights Commission, Smitley requested a long 49-day extension. (*Id.*; Pls.' Partial Opp'n to Defs.' Mot. for an Extension of Time, Dkt. 11). This Court granted Smitley a 28-day extension. (Order, Dkt. 14).

Plaintiff McGuffin served her First Set of Interrogatories, First Set of Requests for Admission, and First Set of Requests for Production on July 14, 2016, with responses due August 13, 2016. (Mtn. to Compel, Dkt. 29 at 3; Dkt. 29-5). No responses were received by the deadline. (Dkt. 29 at 3). Plaintiff McGuffin passed away on August 4, 2016. (Dkt. 22). In order to moot any argument by defendant that McGuffin's previously discovery was no longer enforceable, Plaintiff Fair Housing Center decided to re-serve the three discovery

items – Plaintiff Fair Housing Center's First Set of Interrogatories, First Set of Requests for Admission, and Second Set of Requests for Production – on August 22, 2016, with responses now due September 21, 2016. (Dkt. 29 at 3; Dkt. 29-6). Again, Smitley failed to respond by that deadline. (Dkt. 29 at 3). Plaintiffs' counsel sent an email follow-up to Smitley's counsel on September 28, 2016. (Dkt. 29 at 3; Dkt. 29-7). Smitley's counsel provided no response to that follow-up inquiry. (Dkt. 29 at 3). Plaintiffs attempted in good faith to obtain responses to properly-served written discovery and in spite of numerous good faith attempts, Smitley consistently failed to timely produce responses. (Dkt. 29). The failure of Smitley to respond to this set of written discovery was the first topic in Plaintiffs' Motion to Compel filed on November 17, 2017, and granted on December 7, 2016. (Dkt. 29; Order on Mtn. to Compel, Dkt. 33).

The second topic in Plaintiffs' Motion to Compel involved scheduling of Smitley's deposition. *Id*. On June 27, 2016, Plaintiff McGuffin properly served a Notice of Deposition on Smitley for August 23, 2016. (Dkt. 29 at 3-4; Dkt. 29-8). Having received no communication since the notice was served, Plaintiff's counsel sent an email follow-up to Smitley's counsel on August 18, 2016, inquiring whether the defendant planned to attend. (Dkt. 29 at 4; Dkt. 29-9 at 3). Smitley's counsel responded the same day questioning why the deposition should move forward without a plaintiff, as McGuffin had passed away on August 4, 2016. (Dkt. 29 at 4; Dkt. 29-9 at 2-3). Plaintiffs' counsel responded the same day, instructing Smitley's counsel that the Fair Housing Center had been and continued to be a plaintiff in the lawsuit. (Dkt. 29 at 4; Dkt. 29-9 at 2). Plaintiffs' counsel had also previously informed Smitley's counsel of an intent to file a motion pursuant to Federal Rules of Civil Procedure 25(a) to substitute the appropriate representative of the estate of McGuffin. (Dkt. 29 at 4).

On August 19, 2016, Plaintiff's counsel asked Smitley's counsel about Defendant's intention on attending the noticed deposition. (Dkt. 29 at 4). Smitley's counsel stated that a response would be provided by August 20, 2016. *Id*. Having received no communication, Plaintiff's counsel sent a follow-up email to Smitley's counsel on August 20, 2016, and August 22, 2016. (Dkt. 29 at 4; Dkt. 29-9 at 1-2). The latter communication stated that since no alternate dates or times were proposed, Plaintiff anticipated that Smitley and Smitley's counsel would be present. *Id*. Smitley's counsel finally responded, on the afternoon of August 22, 2016, standing by his initial response on August 18, 2016 – that there was no plaintiff and that Smitley would not be attending the deposition. (Dkt. 29 at 4; Dkt. 29-9 at 1). Smitley's counsel also noted that the deposition was noticed from the now-deceased Plaintiff McGuffin. *Id*.

Plaintiff decided to re-serve the Notice of Deposition in Plaintiff Fair Housing Center's name on August 22, 2016, for September 12, 2016. (Dkt. 29 at 5; Dkt. 29-10). Again, having not received any correspondence from Smitley's counsel since the service date, Plaintiff's counsel sent a follow-up email to Smitley's counsel on September 7, 2016. (Dkt. 29 at 5; Dkt. 29-11 at 3). Plaintiff's and Smitley's counsel spoke on the telephone on September 8, 2016. (Dkt. 29 at 5). For the first time, Smitley's counsel expressed a concern that Smitley's pain medication would make it difficult for her to participate in the deposition. *Id*. Smitley's counsel stated an intention to speak with Smitley's physician to gain his insights about her ability to focus and recall – and if a medication alteration would be possible to ensure her full participation. *Id*.

On September 9, 2016, Plaintiff's counsel agreed to reschedule the noticed deposition and proposed two dates for the rescheduled deposition: September 20, 2016, or September

30, 2016. (Dkt. 29 at 5; Dkt. 29-11 at 2). Plaintiffs' counsel requested that Smitley's counsel provide an update after speaking with Smitley's physician about her ability to fully participate in the deposition. *Id*. Plaintiffs' counsel also communicated a willingness to hold the deposition at Smitley's residence. *Id*. Having received no follow-up correspondence, Plaintiffs' counsel sent an email to Smitley's counsel on September 28, 2016, requesting that Smitley's counsel relay what was learned from Smitley's physician regarding her ability to participate in a deposition. (Dkt. 29 at 6; Dkt. 29-11 at 1). Smitley's counsel provided no response to that follow-up inquiry. (Dkt. 29 at 6).

Plaintiffs attempted in good faith to schedule a deposition to depose Smitley and Plaintiffs provided Smitley numerous opportunities to select dates, times, and locations that would be convenient for her, including offering to hold the deposition at her residence. (Dkt. 29). In spite of these numerous good faith attempts, Smitley consistently failed to participate. (Dkt. 29).

### B. Following Motion to Compel Order

Plaintiffs filed a Motion to Compel involving these two issues on November 17, 2017, which was granted on December 7, 2016, following no response by Smitley. (Dkt. 29; Dkt. 33). Smitley was ordered to (1) respond to Fair Housing Center's outstanding discovery no later December 21, 2016; (2) make herself available for a deposition between December 28, 2016, and January 13, 2017; and (3) to provide Plaintiffs, within five days of the Order, with three different dates between that date range that Smitley would be available for deposition. (Dkt. 33 at 2). The Order noted that if Smitley failed to provide dates within five days, Plaintiffs could choose a date for the deposition and issue a notice. *Id*.

Neither Smitley nor Smitley's counsel made contact with plaintiffs' counsel within five

days of the Order. (Exhibit A, Crishon declaration, ¶ 2). As such, Plaintiffs properly served a Notice of Deposition on Smitley on December 13, 2016, for January 12, 2017. (Exhibit A at ¶ 2; Exhibit B, Fair Housing Center Notice of Deposition of Smitley).

On December 21, 2016—the date given for Smitley to respond to outstanding discovery—a settlement conference was held. (Dkt. 27; Dkt. 37). Smitley and Smitley's counsel appeared for that conference though it was unsuccessful. (Dkt. 37). Despite appearing for the conference, Smitley did not provide any responses to any of the outstanding discovery that day, as ordered by the Court. (Exhibit A at ¶ 3). Rather, Smitley's counsel communicated that responses would be provided "sometime before the deposition." (Exhibit A at ¶ 3). Plaintiffs' counsel requested that responses be provided as soon as possible so that they could be reviewed in advance of the deposition. (Exhibit A at ¶ 3; Exhibit C, December 21, 2016, letter to Smitley's counsel).

On the afternoon of January 11, 2017—the day before the scheduled deposition—Smitley's counsel called Plaintiffs' counsel to state that Smitley would be unable to attend the following day. (Exhibit A at ¶ 4). Smitley's counsel stated that Smitley was on her way to the hospital to be treated for pneumonia and he was unsure how long she would be admitted. (Exhibit A at ¶ 4). Given the numerous deposition cancelations to date, Plaintiffs' counsel requested a physician or hospital statement to document Smitley's condition and hospitalization. (Exhibit A at ¶ 4). Smitley's counsel agreed to obtain and provide a statement in the coming days. (Exhibit A at ¶ 4). Plaintiffs' counsel also reminded Smitley's counsel about the responses to the outstanding discovery ordered to be provided by December 21, 2016, and then verbally committed by Smitley's counsel sometime before the January 12, 2017, deposition. (Exhibit A at ¶ 4).

Smitley's counsel followed-up that phone call with an email. (Exhibit D at 4, Email Correspondence with Smitley's Counsel). He again committed to provide a statement: "I advised her to and she promises that I will be able to obtain a doctor's statement as to her condition and hospitalization. I will get that to you as soon as she or her doctor provides the same to me which I hope is within the next four days." *Id*. He also acknowledged his need to provide discovery responses: "Re: Production and Interrogatories. I again advised Mrs. Smitley of the need for the documents. I cannot get to them until she is released or has someone allow me to retrieve the same from her home." *Id*.

Plaintiffs' counsel responded to that email, recognizing that the January 12, 2017, would be rescheduled. *Id*. at 3-4. Plaintiffs' counsel requested three available dates for deposition rescheduling to be provided by January 16, 2017. *Id*. at 3. The response also again requested responses to the outstanding discovery. *Id*. It also requested the physician statement: "You have indicated that you will obtain and provide to me a doctor's statement as to Ms. Smitley's condition and hospitalization. You will get that to me as soon as Ms. Smitley or her doctor provides the same to you, which you hope is within the next four days." *Id*. at 4.

Having received no proposed deposition dates by January 12, 2017, and no update on Smitley's condition or the promised physician statement "within the next four days," Plaintiffs' counsel sent a follow-up email on January 18, 2017. *Id*. at 3. Smitley's counsel responded that day, stating: "Thank you for allowing a couple of days but, unfortunately, I will not get the doctor's statement before tomorrow. She is now in and out of the hospital but is to call her regular doctor today. She will ask her doctor to send me a short report on her condition and when she is likely to have reached some stability but fear the pneumonia

may worsen." *Id*. at 2.

Again, having received no contact in more than a week, Plaintiff's counsel sent another follow-up email on January 24, 2017. *Id*. at 1-2. Plaintiffs' counsel reiterated the same information from the January 11, 2017, email but also requested that Smitley's counsel provide three available dates for deposition rescheduling by January 30, 2017. *Id*. Smitley's counsel responded on January 26, 2017, stating that he was having trouble communicating with Smitley. *Id*. at 1. He also stated that he would be out of town until the following Monday. *Id*. Smitley's counsel did contact Plaintiff's counsel on January 30, 2017, though the contact was simply to state that he had no information to provide. (Exhibit E, Email Correspondence with Smitley's Counsel).

Both parties' counsel then appeared for a telephonic status conference on February 2, 2017. (Exhibit A at ¶ 5; Entry from Status Conference, Dkt. 38). Smitley's counsel reported that he has been unable to obtain any information needed for discovery responses, any information requested to further settlement discussions, or any type of documentation related to the condition and hospitalization of Smitley. (Exhibit A at ¶ 5). Smitley's counsel communicated that he was concerned that he cannot stay on the case much longer; he expressed his displeasure and disappointment that he has been unable to supply anything that he has promised. (Exhibit A at ¶ 5). Smitley's counsel asked Plaintiffs' counsel to give him a few more days to attempt to obtain the necessary documents before taking any action; Plaintiffs' counsel agreed. (Exhibit A at ¶ 5). There has been no further communication since that status conference. (Exhibit A at ¶ 5).

## II. Argument

### A. Standard and Allowance for Default Judgment Sanction

#### 1. Federal Rules of Civil Procedure 37

The Federal Rules of Civil Procedure provide that if a party fails to obey an order to provide discovery, the Court may order further just orders. Fed. R. Civ. P. 37(b)(2)(A). Such orders may include, among others, "rendering a default judgment against the disobedient party." Fed. R. Civ. P. 37(b)(2)(A)(vi).

When determining appropriate sanctions under Rule 37, the Court considers, among other factors, "the frequency and magnitude of the [party's] failure to comply with court deadlines, the effect of these failures on the court's time and schedules, the prejudice to other litigants, and the possible merits of the plaintiff's suit." *Rice v. City of Chicago*, 333 F.3d 780, 784 (7th Cir. 2003).

The default judgment sanction is appropriate where there is "a clear record of delay, contumacious conduct or prior failed sanction" or where there is clear and convincing evidence that a party displays willfulness, bad faith or fault. *Maynard v. Nygren*, 332 F.3d 462, 467-68 (7th Cir. 2003). *See also Wade v. Soo Line R.R. Corp.*, 500 F.3d 559, 564 (7th Cir. 2007) (noting, however, that this high standard from *Maynard* is not actually required as heightened burdens of proof do not apply in civil cases unless required by a statute or the Constitution, *Grogan v. Garner*, 498 U.S. 279 (1991)).

The Seventh Circuit characterizes bad faith as "conduct which is either intentional or in reckless disregard of a party's obligations to comply with a court order." *Marrocco v. Gen. Motors Corp.*, 966 F.2d 220, 224 (7th Cir. 1992). On the contrary, fault is "unconcerned with the non-complying party's subjective motivation, but rather 'only describe[s] the

reasonableness of the conduct—or lack thereof—which eventually culminated in the violation.'" *Langley by Langley v. Union Elec. Co.*, 107 F.3d 510, 514 (7th Cir. 1997) (quoting *Marrocco* at 224). *See also Long v. Steepro*, 213 F.3d 983, 987 (7th Cir. 2000) ("Although willfulness and bad faith are associated with conduct that is intentional or reckless, the same is not true for 'fault'"). Fault describes the reasonableness of the conduct. *Marrocco* at 224. Amounting to more than a mere mistake, fault "suggests objectively unreasonable behavior." *Brown v. Columbia Sussex Corp.*, 664 F.3d 182, 191 (7th Cir. 2011) (quoting *Long* at 985).

### 2. Inherent Power of the Court

The Court "has the inherent power to sanction for conduct that abuses the judicial process … . The power is 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Barnhill v. United States*, 11 F.3d 1360, 1367 (7th Cir. 1993) (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630–31 (1962)). See also *Montano v. City of Chi.*, 535 F.3d 558, 563 (7th Cir. 2008) ("A district court has inherent authority to sanction conduct that abuses the judicial process."). To use such power, "a court must find that the party 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons … .'" *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 386 (7th Cir. 2008) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991)). Generally, the Court must exercise its inherent powers with restraint and discretion. *Chambers* at 44-45. But, the Court has "the ability to fashion an appropriate sanction for conduct [that] abuses the judicial process." *Id*. In doing so, the Court must consider the egregiousness of the conduct in question in relation to all aspects of the judicial process. *See Greviskes v. Univs. Research Ass'n, Inc.*, 417 F.3d 752, 758-59 (7th Cir. 2005). Default judgment is a hefty sanction but must be available "'not merely to penalize

those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent.'" *Id.* (quoting *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976)).

### B. The Court Should Grant Sanctions under Rule 37

As stated supra, the Court considers the following factors when determining appropriate sanctions under Rule 37: "the frequency and magnitude of the [party's] failure to comply with court deadlines, the effect of these failures on the court's time and schedules, the prejudice to other litigants, and the possible merits of the plaintiff's suit." *Rice v. City of Chicago*, 333 F.3d 780, 784 (7th Cir. 2003). After considering each of the factors, the Court should grant sanctions under Rule 37.

### 1. Smitley Consistently Fails to Comply with Deadlines

The Case Management Plan was approved by this Court on July 20, 2016. (Dkt. 18). As noted when approved and ordered, "Upon approval, this Plan constitutes an Order of the Court. Failure to comply with an Order of the Court may result in sanctions for contempt, or as provided under Rule 16(f), to and including dismissal or default." *Id.* at 11. Beyond the numerous discovery deadlines that Smitley has neglected, discussed below, Smitley has appeared to completely disregard the requirements of this Case Management Plan throughout this litigation.[1] Pursuant to that Plan and Federal Rules of Civil Procedure 26, parties were required to file initial disclosures by September 19, 2016. Smitley never filed initial disclosures. The Plan also required Smitley to file preliminary witness and exhibit lists

---

[1] Smitley has failed to comply with deadlines throughout this litigation, including in situations outside of the Order on the Motion to Compel, the compliance of which is at issue in Motion for Default Judgment. Those additional failures are discussed as Plaintiffs feel it is important to view Smitley's conduct throughout the entire case: "In determining whether the sanction of dismissal constituted an abuse of discretion, we look at the entire procedural history of the case." *Rice v. City of Chicago*, 333 F.3d 780, 784 (7th Cir. 2003) (quoting *Long*, 213 F.3d at 986; accord *Grun*, 163 F.3d at 425.).

by November 29, 2016. Smitley never filed witness or exhibit lists. Neglecting these deadlines amounts to neglecting a Court order.

Additionally, as mentioned, Smitley has failed to comply with discovery deadlines since discovery was first served in this matter. For demonstrative purposes:

- On June 6, 2016, Plaintiff Fair Housing Center served Smitley its First Set of Requests for Production. Under Federal Rules of Civil Procedure 34(b)(2)(A) and 26(d)(2), the response due date was July 25, 2016. Smitley did not respond by July 25, 2016.[2]

- On July 14, 2016, Plaintiff McGuffin served Smitley with its First Set of Interrogatories. Under Federal Rules of Civil Procedure 33(b)(2), the response was due August 13, 2016. Smitley did not respond by August 13, 2016.

- On July 14, 2016, Plaintiff McGuffin served Smitley with its First Set of Requests for Production. Under Federal Rules of Civil Procedure 34(b)(2), the response was due August 13, 2016. Smitley did not respond by August 13, 2016.

- On July 14, 2016, Plaintiff McGuffin served Smitley with its First Set of Requests for Admission. Under Federal Rules of Civil Procedure 36(a)(3), the response was due August 13, 2016. Smitley did not respond by August 13, 2016.

- On August 22, 2016, Plaintiff Fair Housing Center served Smitley with its First Set of Interrogatories. Under Federal Rules of Civil Procedure 33(b)(2), the response was September 21, 2016. Smitley did not respond by September 21, 2016.

- On August 22, 2016, Plaintiff Fair Housing Center served Smitley with its Second Set of Requests for Production. Under Federal Rules of Civil Procedure 34(b)(2), the

---

[2] When a tardy response was received, Smitley provided zero documents in response to 21 requests for production. (Dkt. 29-3). Additionally, Smitley objected to Requests #15 and #16 without stating grounds for objections, as required by Federal Rules of Civil Procedure 34(b)(2)(B).

response was September 21, 2016. Smitley did not respond by September 21, 2016.

- On August 22, 2016, Plaintiff Fair Housing Center served Smitley with its First Set of Requests for Admission. Under Federal Rules of Civil Procedure 36(a)(3), the response was September 21, 2016. Smitley did not respond by September 21, 2016.

- On December 7, 2016, the Court ordered Smitley to "provide to the plaintiff three different dates between December 28 and January 13 that she is available for deposition" by December 12, 2016. Smitley did not provide any dates to Plaintiffs.

Since the beginning of this matter, Smitley has operated under the concept that deadlines did not apply to her.

### 2. Smitley's Failures Affect the Court's Time and Schedules

Plaintiffs filed the Complaint initiating this action on April 19, 2016. (Dkt. 1). Plaintiffs first served written discovery on June 6, 2016, and first served a Notice of Deposition for Smitley on June 27, 2016. To date, Plaintiffs have received no substantive discovery responses and have not had an opportunity to depose Smitley, despite noticing the deposition three times and despite an Order from this Court compelling such. Pursuant to the Case Management Plan, non-expert discovery closed on February 20, 2017. (Dkt. 18). Smitley has demonstrated a consistent failure to comply with deadlines, as discussed in the previous section. As a result of these failures, it is unlikely this matter can continue with the current schedule of deadlines.

### 3. Smitley's Failures Prejudice the Plaintiffs

It has been four months since initial disclosures were required to be served. Smitley's failure to provide that information alone has prejudiced Plaintiffs. A "major purpose" of the initial disclosure requirements is to "accelerate the exchange of basic information about the

case" which is "needed in most cases to prepare for trial or make an informed decision about settlement." 1993 Amendments to Fed. R. Civ. P. 26(a), advisory committee's note. Smitley's failure in that regard has prevented Plaintiffs from obtaining basic information needed to further prosecute this case and make informed decisions about moving forward.

Even without that major failure, the complete lack of information provided in response to Plaintiffs' numerous discovery requests and good faith attempts to follow-up leaves little question that Smitley's failures have prejudiced Plaintiffs. To date, despite frequent and consistent attempts by Plaintiffs' counsel to obtain necessary information to move this case forward, and despite the fact that we are now 10 months since the filing of this action, Smitley has provided no substantive information to Plaintiffs.

### 4. Smitley Would Lose on the Merits of her Case

The Fair Housing Act staked off and prohibited swaths of housing-related conduct and labeled these actions "discriminatory housing practices." 42 U.S.C. § 3602(f) ("'Discriminatory housing practice' means an act that is unlawful under section 3604 … of this title."). Plaintiffs are confident they will succeed on the merits of this case if this matter moves forward. Smitley discriminated against McGuffin in violation of 42 U.S.C. § 3604(f)(1) and (f)(2) when she pursued eviction against McGuffin because Smitley maintained that McGuffin was "too sick" to live there and should be "in a nursing home."

Even more blatant of a violation, though, is Smitley's discriminatory statements regarding the rental units being "Adults Only." This statement violates the Fair Housing Act: "[I]t shall be unlawful to make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on … *familial status* …, or an

intention to make any such preference, limitation, or discrimination." 42 U.S.C. § 3604(c) (emphasis added).

To prove that a statement violates § 3604(c), a plaintiff "must show that (1) [the defendant] made a statement; (2) the statement was made with respect to the sale or rental of a dwelling; and (3) the statement indicated a preference, limitation, or discrimination on the basis of [some protected status]." *E.g., Corey v. Sec'y, U.S. Dep't of Hous. & Urban Dev. ex rel. Walker*, 719 F.3d 322, 326 (4th Cir. 2013); *White v. U.S. Dep't of Hous. & Dev.*, 475 F.3d 898, 904 (7th Cir. 2007) ("White needed to present evidence that: (1) Wooten made a statement; (2) the statement was made with respect to the sale or rental of a dwelling; and (3) the statement indicated a preference, limitation, or discrimination …"). Often, the first two elements are either uncontested (or uncontestable), so liability turns on whether the defendant's statement "indicates" discrimination.

Whether the defendant's statement indicates discrimination depends on whether the statement "suggests to an ordinary reader that a particular [protected group] is preferred or dispreferred." *Jancik v. Dep't of Hous. & Urban Dev.*, 44 F.3d 553, 556 (7th Cir. 1995) (quoting *Ragin v. New York Times Co.*, 923 F.2d 995, 999 (2d Cir.), *cert. denied*, 502 U.S. 821 (1991)). The mere suggestion of dispreference is enough: "[C]ourts have not required that [statements] jump out at the reader with their offending message, but have found instead that the statute is violated by 'any [statement] that would discourage an ordinary reader of a particular [protected group] from answering it.'" *Id.* (internal quotation marks omitted). And what matters most is what was said, not what the speaker meant. "[N]o showing of subjective intent to discriminate is needed to prove a violation of this section … ." *United States v. Sec. Mgmt. Co.*, 96 F.3d 260, 269 (7th Cir. 1996).

Thus, if the statement—on its face—indicates discrimination, it violates § 3604(c) even if the speaker had no discriminatory intent. *Id*. The ordinary listener standard is, essentially, one of strict liability. *E.g., Hunter v. Williamson*, 2008 WL 2599110, at *3 n.10 (E.D. La. June 25, 2008) (quoting *HUD v. Schmid*, HUD-ALJ No. 02-98-0276-8, at 10 (July 15, 1999)); *see also The Sec'y, United States Dep't of Hous. & Urban Dev. v. Corey*, 2012 WL 2177919, at *2 (HUDALJ 10-M-207-FH-27, June 15, 2012); Robert G. Schwemm, *Discriminatory Housing Statements and § 3604(c)*: *A New Look at the Fair Housing Act's Most Intriguing Provision*, 29 Fordham Urb. L.J. 187, 216 (2001) ("3604(c) is essentially a 'strict liability' statute").

The investigation conducted by the Fair Housing Center revealed a large "Adults Only" sign outside the front door. (Dkt 1 at 7). The "Adults Only" sign affixed to the exterior of the Smitley Apartments building is a statement under 42 U.S.C. § 3604(c). And the statement "Adults Only" suggests to an ordinary reader a limitation on families and children. As to these points, no reasonable jury could find otherwise and there is no justification defense available under § 3604(c). If this matter moves forward, Plaintiffs will move for summary judgment on liability under 42 U.S.C. § 3604(c). In cases with written statements, plaintiffs often obtain summary judgment on liability under § 3604(c).[3] If that motion is granted – even in part – it will lock-in Plaintiffs' entitlement to much of the relief they seek

---

[3] E.g., *Fair Hous. Ctr. of the Greater Palm Beaches, Inc. v. Sonoma Bay Cmty. Homeowners Ass'n, Inc.*, 2015 WL 5737346, at *7 (S.D. Fla. Oct. 1, 2015) (granting summary judgment to plaintiff under § 3604(c)); *Rojas v. Bird*, 2014 WL 260597, at *4 (C.D. Cal. Jan. 10, 2014) (same); *Fair Hous. Ctr. of Sw. Michigan v. Hunt*, 2012 WL 11789772, at *22 (W.D. Mich. Mar. 29, 2012) (same); *Iniestra v. Cliff Warren Investments, Inc.*, 886 F. Supp. 2d 1161, 1169 (C.D. Cal. 2012) (same); *Mathews v. Arrow Wood LLC*, 2009 WL 8659593, at *9 (C.D. Cal. Apr. 2, 2009) (same); *Pack v. Fort Washington II*, 689 F. Supp. 2d 1237, 1246 (E.D. Cal. 2009) (same); *United States v. Plaza Mobile Estates*, 273 F. Supp. 2d 1084, 1094 (C.D. Cal. 2003); *Llanos v. Estate of Coehlo*, 24 F. Supp. 2d 1052, 1061 (E.D. Cal. 1998); *Fair Hous. Cong. v. Weber*, 993 F. Supp. 1286, 1291 (C.D. Cal. 1997) (same); *Blomgren v. Ogle*, 850 F. Supp. 1427, 1440 (E.D. Wash. 1993) (same).

in this case, including damages, injunctive relief, and attorneys' fees and costs. The amount of damages, as well as liability on Plaintiffs' other theories, would remain for trial.

### C. The Court Should Enter Default Judgment against Smitley because there is a Clear Record of Delay and she has Displayed Bad Faith and Fault

Plaintiffs recognize that there are less severe sanctions than default judgment available and that it is a "draconian" remedy. *Marrocco* at 223. However, Smitley's conduct warrants such. Default judgment is appropriate where there is "a clear record of delay, contumacious conduct or prior failed sanction" or where a party displays willfulness, bad faith or fault. *Maynard* at 467-68. Bad faith is "conduct which is either intentional or in reckless disregard of a party's obligations to comply with a court order." *Id.* at 224. Fault is "unconcerned with the non-complying party's subjective motivation, but rather 'only describe[s] the reasonableness of the conduct—or lack thereof—which eventually culminated in the violation.'" *Langley* at 514 (quoting *Marrocco at* 224). Fault describes the reasonableness of the conduct. *Marrocco* at 224. Amounting to more than a mere mistake, fault "suggests objectively unreasonable behavior." *Brown* at 191. (quoting *Long at* 985).

In failing to obey the Court's Order on Plaintiffs' Motion to Compel, Smitley has displayed bad faith and fault. (Dkt. 33). The Order required Smitley to do three things: (1) respond to Fair Housing Center's outstanding discovery no later December 21, 2016; (2) make herself available for a deposition between December 28, 2016, and January 13, 2017; and (3) to provide Plaintiffs, within five days of the Order, with three different dates between that date range that Smitley would be available for deposition. (Dkt. 33 at 2). Smitley has done none of those things. Smitley is either acting intentionally or, at the very least, with reckless disregard of her obligations under the Order. In addition to bad faith, Smitley has acted with fault. Smitley's conduct throughout this entire litigation – but particularly in

response to a court order compelling compliance and participation – is utterly and objectively unreasonable. Plaintiffs have also demonstrated a clear record of delay by Smitley.

Sanctions under Rule 37 need be proportionate to the circumstances surrounding the failure to comply with discovery. Default judgment, while admittedly severe, is proportionate to Smitley's conduct. As noted, it is a "draconian" remedy. *Marrocco* at 223. "That doesn't mean, however, that it can never be used. Even Draco got it right every once in awhile, and today, when district courts have several hundred cases on their dockets, there are times when the 'draconian' remedy is appropos [sic]." *Banco Del Atlantico, S.A. v. Woods Indus. Inc.*, 519 F.3d 350, 354 (7th Cir. 2008). Plaintiffs maintain and have demonstrated that we have arrived at that point in this case.

### III. Conclusion

For the foregoing reasons, Plaintiffs request that the Court grant their Motion for Default Judgment.

Dated: March 3, 2017.

    Respectfully submitted,

    *s/ Thomas E. Crishon*
    Thomas E. Crishon (No. 28513-49)
    Melissa L. Keyes (No. 30152-49)
    INDIANA DISABILITY RIGHTS
    4701 N. Keystone Ave., Suite 222
    Indianapolis, IN 46205
    317/722-5555
    Fax: 317/722-5564
    tcrishon@indianadisabilityrights.org
    mkeyes@indianadisabilityrights.org

    Christopher Brancart (CA128475)
    BRANCART & BRANCART
    Post Office Box 686

        Pescadero, CA 94060
        650/879-0141
        Fax: 650/879-1103
        cbrancart@brancart.com

        Attorneys for Plaintiffs

### CERTIFICATE OF SERVICE

On March 3, 2017, I served all parties by their attorneys' of record by filing with the Court's CM/ECF system **PLAINTIFFS' BRIEF IN SUPPORT OF THEIR MOTION FOR DEFAULT JUDGMENT**. The CM/ECF system delivered the document by email to:

Melissa L. Keyes
INDIANA DISABILITY RIGHTS
4701 N. Keystone Ave., Suite 222
Indianapolis, IN 46205
mkeyes@indianadisabilityrights.org

Christopher Brancart
BRANCART & BRANCART
P.O. Box 686
Pescadero, CA 94060
cbrancart@brancart.com

Aaron Haith
425 E. Walnut Street
Indianapolis, IN 46202
ahaith@sbcglobal.net

*s/ Thomas E. Crishon*
Thomas E. Crishon
