UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| FAIR HOUSING CENTER OF CENTRAL INDIANA, INC.; and JESSICA CARLTON, in her capacity as personal representative of the estate of Carolyn McGuffin,<br><br>    Plaintiffs,<br><br>v.<br><br>CAROLYN SMITLEY, individually and as trustee of the Smitley Family Trust,<br><br>    Defendant. | Case No. 1:16-cv-880-WTL-DML |

**PLAINTIFFS' TRIAL BRIEF REGARDING DAMAGES**

## I.    INTRODUCTION

This is a fair housing case. Carolyn McGuffin leased a dwelling at the Smitley Apartments, owned by the Smitley Family Trust and managed by Carolyn Smitley. Smitley repeatedly demanded that McGuffin, who was largely confined to a hospital bed in the unit while recovering from an illness, leave the unit. Smitley maintained that McGuffin was "too sick" to live there and should be "in a nursing home." Smitley refused McGuffin's attempt to pay rent and then unsuccessfully filed for eviction for non-payment of rent. The Fair Housing Center of Central Indiana investigated McGuffin's allegations. The investigation confirmed the discrimination and additionally revealed familial status discrimination, a large "Adults Only" sign outside the front door. (See Doc. 1, Complaint par. 10-39.)

Plaintiffs Fair Housing Center of Central Indiana (the "Fair Housing Center") and Carolyn McGuffin then filed this lawsuit. As a result of Smitley's repeated refusal to follow court orders, provide discovery, and make herself available for a deposition through the

lawsuit, Plaintiffs filed a Motion for Default Judgment on March 3, 2017. (Doc. 39). This Court granted that motion with regard to Smitley in her individual capacity on January 10, 2018. (Doc. 71). Plaintiffs then filed a Motion for Default Judgment relative to Smitley in her capacity as Trustee of the Smitley Family Trust on January 26, 2018. (Doc. 72). This Court granted that motion on February 5, 2018. (Doc. 73). A hearing was scheduled for March 12, 2018, for determination of damages for both Smitley in her individual capacity and in her capacity as Trustee of the Smitley Family Trust. (Doc. 71, 73).

## II.   LEGAL STANDARD APPLICABLE TO DEFAULT JUDGMENT

The general rule is that, upon entry of default, well-pled allegations in the complaint regarding liability are deemed true. *Fair Housing of Marin v. Combs*, 2000 WL 365029 at *2 (N.D. Cal. 2000) *citing Geddes v. United Financial Corp.*, 559 F.2d 557, 560 (9th Cir. 1977). "While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation." *Flaks v. Koegel*, 504 F.2d 702, 707 (2nd Cir. 1974). The plaintiff has the burden to establish a right to her requested relief, and "the court may not order such relief until we have determined 'with reasonable certainty' the proper amount to award as damages—a determination which can be made either based upon an evidentiary hearing or from 'definite figures contained in the documentary evidence or in detailed affidavits.'" *Storey v. I.M.F.N. Am., Inc.*, 2017 WL 727023 at *2 (S.D. Ind. Feb. 24, 2017) *citing Dundee Cement Co. v. Howard Pipe & Concrete Products, Inc.,* 722 F.2d 1319, 1323 (7th Cir. 1983) (citations omitted); *see also In re Catt,* 368 F.3d 789, 793 (7th Cir. 2004).

A default also "effectively constitutes an admission that damages were proximately caused by the defaulting party's conduct; that is, the acts pleaded in a complaint violated the

laws upon which a claim is based and caused injuries as alleged." *Parris v. Pappas*, 844 F. Supp. 2d 271, 275-76 (D. Conn. 2012), *citing Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 159 (2nd Cir. 1992). The moving party need prove "only that the compensation sought relates to the damages that naturally flow from the injuries pleaded." *Parris*, 844 F. Supp. 2d at 276.

### III. DAMAGES

Under the Fair Housing Act ("FHA"), "if the court finds that a discriminatory housing practice has occurred or is about to occur, the court may award to the plaintiff actual and punitive damages" and injunctive relief "(including an order enjoining the defendant from engaging in such practice or ordering such affirmative action as may be appropriate)." 42 U.S.C. § 3613(c)(1).

#### A. Carolyn McGuffin

##### 1. *Survival of Action*

Carolyn McGuffin died during the pendency of this lawsuit. (Doc. 22.) On December 12, 2016, this Court granted the motion to substitute Jessica Carlton in her capacity as personal representative of the estate of Carolyn McGuffin in the place of Carolyn McGuffin. (Doc. 36.)

According to the Seventh Circuit, "state law governs the survival of statutory civil rights actions" like the ADA. *Hutchinson on behalf of Baker v. Spink*, 126 F.3d 895, 898 (7th Cir. 1997) (citing *Slade v U.S. Postal Serv.*, 952 F.2d 357, 360 (10th Cir. 1991) [for Title VII purposes, federal common law incorporates state statute for survival of personal injury actions]).

In Indiana, when a person suffers personal injury caused by another and

subsequently dies from causes other than those injuries, the personal representative of the decedent "may maintain an action against the wrongdoer to recover all damages resulting before the date of death from those injuries that the decedent would have been entitled to recover had the decedent lived. The damages inure to the exclusive benefit of the decedent's estate." Ind. Code § 34-9-3-4. The same is true when the plaintiff dies during the pendency of her lawsuit. Ind. Code § 34-9-3-1. The Court of Appeals of Indiana has construed the survival statute to provide for recovery of both compensatory *and* punitive damages by the personal representative of the decedent. *Foster v. Evergreen Healthcare, Inc.*, 716 N.E.2d 19, 27-28 (Ind.Ct.App. 1999). In that opinion, the court expressly rejected an older federal district court case that had concluded that punitive damages were not available to the personal representative of a decedent, *Mundell v. Beverly Enterprises-Indiana, Inc.*, 778 F. Supp. 459 (S.D. Ind. 1991). *Id.*

## 2. *Compensatory damages*

As a result of Smitley's discriminatory conduct, McGuffin, in a fragile state as it was, had to suffer near daily harassment for almost two months and, with it, embarrassment, frustration, and distress. Then, when Smitley tried to evict her, she had to face the added stress of potentially losing her home and becoming, not just homeless, but homeless in an incredibly vulnerable condition. On top of that, she was worried about trying to find new housing which would be affordable and accessible to someone with disabilities; a difficult task in Indianapolis. (Doc. 1, Complaint par. 41.)

In FHA cases, "compensatory damages may be awarded for humiliation and emotional distress established by testimony or inferred from the circumstances." *Johnson v. Hale*, 940 F.2d 1192, 1193 (9th Cir. 1991), *citing Phiffer v. Proud Parrot Motor Hotel, Inc.*, 648

F.2d 548, 552-53 (9th Cir. 1980). "No evidence of economic loss or medical evidence of mental or physical symptoms stemming from the humiliation need be submitted." *Johnson*, 940 F.2d at 1193. Indeed, most of the actual damages awarded to individuals in FHA cases have been to compensate them for nonmonetary injuries such as humiliation, embarrassment, and emotional distress. Schwemm, Housing Discrimination Law and Litigation § 25:5.[1]

In a case similar to this, the district court in *Parris v. Pappas* awarded $100,000 in compensatory damages for emotional distress where the landlord attempted to evict a resident on the basis of disability because of the presence of her live-in aid:

> The Court finds that Ms. Parris suffered significant emotional and physical distress arising from defendants' actions. Specifically, plaintiff experienced fear and anxiety at the prospect of losing her live-in aide and the loss of her home through eviction proceedings initiated by defendants. Plaintiff's medical conditions are severe and the services provided by her live-in aide are necessary.

*Parris*, 844 F. Supp. 2d at 276.

Plaintiffs request that the Court award damages to the personal representative of the

---

[1] See, e.*g.*: *Broome v. Biondi*, 17 F. Supp. 2d 211, 223–26 (S.D. N.Y. 1997) (upholding jury's award of $228,000 to married couple for emotional injury); *Paschal v. Flagstar Bank*, 295 F.3d 565, 59 Fed. R. Evid. Serv. 875, 2002 FED App. 0239P (6th Cir. 2002) (upholding jury award based primarily on non-economic damages of $125,000 to one couple and reversing on statute of limitations grounds similarly based award of $250,000 to second couple); *Green v. Rancho Santa Margarita Mortgage Co.*, 28 Cal. App. 4th 686, 33 Cal. Rptr. 2d 706 (4th Dist. 1994) (couple's emotional distress would easily support jury's award of $150,000); *Davis v. Mansards*, 597 F. Supp. 334, 344, 347 (N.D. Ind. 1984) ($27,500 to two couples for humiliation, emotional distress, and loss of civil rights); *Pollitt v. Bramel*, 669 F. Supp. 172, 176–77 (S.D. Ohio 1987) ($25,000 to a married couple primarily for emotional distress and humiliation); *Krueger v. Cuomo*, 115 F.3d 487, 491–93 (7th Cir. 1997) ($20,000 for single woman's emotional distress and $2,000 for her inconvenience in having to secure alternative housing); *Phillips v. Hunter Trails Community Ass'n*, 685 F.2d 184, 190–91 (7th Cir. 1982) ($20,000 to a married couple for humiliation, embarrassment, and mental and emotional distress); *Douglas v. Metro Rental Services, Inc.*, 827 F.2d 252, 256–57 (7th Cir. 1987) ($10,000 to four plaintiffs for mental and emotional distress); *see also Littlefield v. McGuffey*, 954 F.2d 1337, 1348–49 (7th Cir. 1992) (affirming $50,000 jury award to single plaintiff primarily for emotional distress).

estate of Carolyn McGuffin in a comparable amount.

### 3. *Punitive damages*

Under the Fair Housing Act, punitive damages are appropriate where the defendant acts with "reckless or callous disregard for the plaintiff's rights," or "consciously and intentionally discriminated" against the plaintiff. *United States v. Balistrieri*, 981 F. 2d 916, 936 (7th Cir. 1992). Punitive damages "serve the purpose 'of punishing the defendant, of teaching him not to do it again, and deterring others from following his example.'" *Smith v. Wade*, 461 U.S. 30, 56 (1983).

In this case, the allegations of the well-pleaded complaint show that Smitley consciously and intentionally discriminated against McGuffin or, at a minimum, acted with reckless disregard of McGuffin's rights. The complaint alleges that Smitley was repeatedly put on notice that her attempts to evict McGuffin for the stated reason of her disability were unlawful. The Fair Housing Center wrote a letter to Smitley, telling her that their investigation revealed discrimination and asking her to hold off evicting McGuffin. (Doc. 1, Complaint par. 33-36.) Smitley called the Fair Housing Center and told them that McGuffin "needs to be in a facility until she can get well." Smitley refused to hold off. (Doc. 1, Complaint par. 37.) At the eviction hearing, Smitley told the judge she wanted McGuffin out, saying she didn't want her living there with a hospital bed while sick. (Doc. 1, Complaint par. 38.) Even after the judge entered judgment in McGuffin's favor and directing Smitley to accept McGuffin's rent, Smitley continued to refuse to take McGuffin's rent, requiring McGuffin to seek assistance from her legal services attorney and the Fair Housing Center. (Doc. 1, Complaint par. 39.)

"Perhaps the most important indicium of the reasonableness of a punitive damages

award is the degree of reprehensibility of the defendant's conduct." *Parris v. Pappas*, 844 F. Supp. 2d 271, 282 (D. Conn. 2012), *citing Ziemba v. Armstrong*, 433 F.Supp.2d 248, 255 (D. Conn. 2006) (*quoting BMW of North America, Inc. v. Gore*, 517 U.S. 559, 575 (1996)). To assess the degree of reprehensibility, the court must consider three "aggravating factors": "(1) whether a defendant's conduct was violent or presented a threat of violence; (2) whether a defendant acted with malice as opposed to mere negligence; and (3) whether a defendant has engaged in repeated instances of misconduct." *Id.*

Here Smitley's conduct contains those aggravating factors. Smitley repeatedly attempted to evict McGuffin because of her disability, even after she had been told that it was unlawful. Her conduct, although not physically violent, was threatening because she was determined to put McGuffin – an ill and vulnerable person – out of her house.

The Court should impose a significant punitive damages award.

### B.    Fair Housing Center of Central Indiana

#### 1.    *Compensatory damages*

As a result of defendants' conduct, the Fair Housing Center lost the valuable staff time spent investigating the Smitley's discrimination and counseling McGuffin about her rights. Smitley's discrimination frustrated the Fair Housing Center's mission, which is to ensure equal housing opportunity across central Indiana. (Doc. 1, Complaint par. 42.)

The Seventh Circuit has characterized diversion of resources damages as equivalent to the "opportunity costs" of pursuing the investigation of the defendant's practices. *U.S. v. Balistrieri*, 981 F.2d 916, 933 (7th Cir. 1992), *see also Bellwood v. Dwivedi*, 895 F.2d 1521, 1526 (7th Cir. 1990). Damages are cognizable for harm caused by diversion of resources

from Fair Housing Center's core programs to investigate the allegations against Smitley. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 n. 19 (1982).

Courts do not require fair housing organizations to calculate an exact figure down to the penny to grant compensatory damages for the tasks the organizations perform when investigating a case. *So. Cal. Housing Rights Center v. Krug*, 564 F.Supp.2d 1138, 1147-48 (C.D. Cal. 2007), *citing Chicago v. Matchmaker Real Estate Sales Center*, 982 F.2d 1086, 1099 (7th Cir. 1992) (affirming lower court's compensatory damages to fair housing organization of a set fee of $3,000 for past audits, $5,000 for expected monitoring costs, and $6,000 for continued auditing).

In this case, Fair Housing Center seeks $5,901.82 in damages for diversion of resources. Time spent by Fair Housing Center employees (at consultant rates[2]) and expenses related to investigating McGuffin's complaint are as follows:

| FHCCI Employee | Hours | Rate | Total |
|---|---|---|---|
| Amy Nelson | 34.75 | $150.00 | $5,212.50 |
| Brady Ripperger | 7.25 | $90.00 | $652.50 |
| **Staff Total:** | **42.00** | | **$5,865.00** |
| Other expenses | | | $36.82 |
| **TOTAL:** | | | **$5,901.82** |

The Fair Housing Center suffered frustration of mission damages as well, which are only cured by undertaking significant outreach. A fair housing organization may suffer redressable injury to its "non-economic interest in encouraging open housing," or frustration

---

[2] In *Fair Housing of Marin v. Combs*, a fair housing decision from almost two decades ago, the Court deemed consultant-type rates appropriate for a fair housing organization in the determination of diversion of resources calculations: "FHOM's proposed hourly rates are reasonable, and even modest for this market. Moreover, it is completely reasonable to charge an hourly rate that does not match the *pro rata* salary of the individual; to find otherwise would place into question fees and costs associated with a litany of professionals (including attorneys) whose hourly rate and salary prorated to the hour bear only passing resemblance to one another." *Fair Housing of Marin v. Combs*, 2000 WL 365029 at *3 (N.D.Cal. 2000).

of mission. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 368 n. 20 (1982). The Fair Housing Center's mission is to eradicate housing discrimination through education, outreach, counseling and enforcement. (Doc. 1, Complaint par. 1.)

In addition to the disability discrimination against McGuffin, Smitley had also erected a large "Adults Only" sign clearly visible from a busy road in Indianapolis, indicating that families with children were not welcome. Redressing violations of § 3604(c)[3] through literature and trainings are going to be especially important for the Fair Housing Center. Such violations "delay acceptance and appreciation of the notion that fair housing is now the law of the United States and require ongoing, costly efforts to re-educate relevant groups about their rights and responsibilities … ." Robert G. Schwemm, *Discriminatory Housing Statements and § 3604(c): A New Look at the Fair Housing Act's Most Intriguing Provision*, 29 Fordham Urb. L.J. 187, 250 (2001); *see also Spann v. Colonial Village*, 899 F.2d 24, 30 (D.C. Cir. 1990) ("the ads created a public impression that segregation in housing is legal, thus facilitating discrimination by defendants or other property owners and requiring a consequent increase in [fair housing] organizations' educational programs on the illegality of housing discrimination") (Ginsberg, J.).

In *So. Cal. Housing Rights Center v. Krug*, 564 F.Supp.2d 1138, 1148 (C.D. Cal. 2007), the landlord discouraged and outright denied housing opportunities for families with children. Though no overt signage was erected like in the present case, the Court nonetheless found: "In order to stop Defendant's discriminatory practices and counteract the effects of these practices in the community, the Court finds that HRC will need to invest significant

---

[3] Section 3604(c) of the Fair Housing Act prohibits statements or advertisements – such as the large sign that Smitley erected – that, to an ordinary reader or listener, suggest any preference, limitation, or discrimination against a protected group.

resources into monitoring the subject property and conducting education and outreach." *Krug* at 1148. The Court determined that this amounted to $9,688.44 per year for a three year period, totaling $29,065.32. *Id*.

In *Fair Housing of Marin v. Combs*, 2000 WL 365029 (N.D.Cal. 2000), an African-American tenant had been asked to leave the housing complex for reasons she believed to be solely racial. The Court found that "the costs envisioned for the design, printing and dissemination of literature aimed at redressing the impact Combs' discrimination had on the Marin housing market is adequate to redress FHOM for the harm to its mission." *Fair Housing of Marin v. Combs*, 2000 WL 365029 at *3 (N.D.Cal. 2000). The Court states that $10,160 was appropriate in that instance in frustration of mission damages. *Id*.

In this case, the Fair Housing Center requests that the Court award damages for frustration of mission in comparable amounts.

### 2. *Punitive damages*

In this case, it is appropriate to award the Fair Housing Center punitive damages in the amount of three times its compensatory damages. A similar formula was followed by the district court in *Fair Housing of Marin,* an FHA default prove up, where the district court awarded $24,377 in compensatory damages and $74,400 in punitive damages pursuant to a default judgment in an FHA action, concluding: "The Court finds that the award bears a suitably close relationship to the actual discriminatory acts fueling this lawsuit …, while staying within established constitutional norms when compared to the compensatory damages award." *Fair Housing of Marin v. Combs*, 2000 WL 365029 at *5 (N.D.Cal. 2000), referencing *Pacific Mutual Life v. Haslip*, 499 U.S. 1, 23-24 (1991) (punitive damages award four times as large as compensatory award "does not cross the line into the area of

constitutional impropriety.")

## IV. INJUNCTIVE RELIEF

When a fair housing violation has occurred, 'a district court has broad and flexible equitable powers to fashion a remedy that will fully correct past wrongs.'" *So. Cal. Housing Rights Center v. Krug*, 564 F.Supp.2d 1138, 1145 (C.D. Cal. 2007), *citing Atkins v. Robinson*, 545 F.Supp. 852, 889 (E.D.Va.1982), *judgment aff'd*, 733 F.2d 318 (4th Cir. 1984); *see also Davis v. Mansards*, 597 F.Supp. 334, 348 (N.D. Ind. 1984) (explaining that when granting comprehensive injunctive relief "[t]he public interest in abolishing [ ] discrimination dictates that the defendants be held to a continuing high standard of fair dealing."). "Injunctive relief should be structured to achieve the twin goals of insuring that the [Fair Housing] Act is not violated in the future and removing any lingering effects of past discrimination." *Marable v. Walker*, 704 F.2d 1219, 1221 (11th Cir. 1983).

In *Krug*, the fair housing organization sought (1) entry of an injunction that defendants no longer discriminate; (2) training of the defendant's management and staff on fair housing laws; (3) display of fair housing placards and brochures in all offices; (4) display of Equal Housing Opportunity logo; (5) monitoring of the defendant's application process and rental decisions, and (6) adoption of written procedures on rental process and fair housing policy. *So. Cal. Housing Rights Center v. Krug*, 564 F.Supp.2d 1138, 1145 (C.D. Cal. 2007). The Court ordered, for a period of three years, that the defendant (1) shall not discriminate in any aspect in rental of dwellings, (2) shall undergo yearly fair housing training, (3) shall post and maintain a fair housing sign in a form approved by HUD, (4) shall maintain availability list, inquiry log, and waiting list, and (5) shall immediately adopt and implement objective, uniform, nondiscriminatory standards in renting housing units. *Id*. at

1153-1154.

Here, the Fair Housing Center seeks entry of the following terms of injunctive relief: Defendant (1) shall not discriminate in any aspect in rental of dwellings, (2) shall adopt and implement a written reasonable accommodation and modification policy prohibiting discrimination on the basis of disability in the operation of the subject property and any other residential properties she or the Smitley Family Trust owns; (3) shall adopt and implement a written policy prohibiting discrimination on the basis of familial status in the operation of the subject property and any other residential properties she or the Smitley Family Trust owns; (4) shall remove the "Adults Only" sign from the subject property and post and maintain fair housing sign in a form approved by HUD; and (5) she and all Smitley Family Trust employees and agents shall attend a fair housing training by the Fair Housing Center on the requirements of the Fair Housing Act as well as on disability awareness once a year for three years, with appropriate compensation for such training paid to the Fair Housing Center.

**V.     ATTORNEYS' FEES**

In a Fair Housing action, "the Court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee and costs." 42 U.S.C. § 3613(c)(2). Plaintiffs are the prevailing party in this action and are therefore entitled to reasonable attorney's fees and costs. Plaintiffs will file a motion for appropriate fees and costs following entry of judgment.

//

//

//

## VI. CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court enter judgment in their favor pursuant to the default judgment and award the requested damages and relief.

Dated: March 9, 2017.

>
> Respectfully submitted,
>
> *s/ Thomas E. Crishon*
> Thomas E. Crishon (No. 28513-49)
> Melissa L. Keyes (No. 30152-49)
> INDIANA DISABILITY RIGHTS
> 4701 North Keystone Avenue, Suite 222
> Indianapolis, IN 46205
> 317/722-5555
> Fax: 317/722-5564
> tcrishon@indianadisabilityrights.org
> mkeyes@indianadisabilityrights.org
>
> Christopher Brancart (CA128475)
> BRANCART & BRANCART
> Post Office Box 686
> Pescadero, CA 94060
> 650/879-0141
> Fax: 650/879-1103
> cbrancart@brancart.com
>
> Attorneys for Plaintiffs

### CERTIFICATE OF SERVICE

On March 9, 2018, I served all parties by filing with the Court's CM/ECF system and by first-class mail the attached document, **PLAINTIFFS' TRIAL BRIEF REGARDING DAMAGES.**

The CM/ECF system delivered the document by email to:

Melissa L. Keyes
INDIANA DISABILITY RIGHTS
4701 N. Keystone Ave., Suite 222
Indianapolis, IN 46205
mkeyes@indianadisabilityrights.org

Christopher Brancart
BRANCART & BRANCART
P.O. Box 686
Pescadero, CA 94060
cbrancart@brancart.com

The document was sent by first-class mail to:

Carolyn Smitley
7309 S. Arlington Avenue
Indianapolis, IN 46237

s/ <i>Thomas E. Crishon</i>
Thomas E. Crishon