# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| FAIR HOUSING CENTER OF CENTRAL INDIANA, INC. et al., )<br>)<br>Plaintiffs, )<br>)<br>vs. )<br>)<br>CAROLYN SMITLEY et al., )<br>)<br>Defendants. ) | Cause No. 1:16-cv-880-WTL-DML |

## ENTRY ON MOTIONS FOR DEFAULT JUDGMENT

This cause is before the Court on the Plaintiffs' Motions for Entry of Default Judgment (Dkt. Nos. 39 & 72). The Court held a hearing on the motions on March 12, 2018; the Defendants were given notice of the hearing but did not appear. The Plaintiffs also have filed a motion for attorney fees and costs (Dkt. No. 83). The Court, being duly advised, **GRANTS** the motions and awards the Plaintiffs damages, attorney fees, and costs as set forth below.

## I. BACKGROUND

The Plaintiffs allege the following facts in their Complaint: Carolyn McGuffin moved into Apartment 8 at the Smitley Apartments, which are located at 5000 Southeastern Avenue in Indianapolis and owned by Defendant Smitley Family Trust. A few months after moving in, McGuffin was diagnosed with necrotizing fasciitis, a serious flesh-eating infection that is neither contagious nor communicable, and was hospitalized. About three months after contracting the disease, McGuffin was released from the hospital and returned to Apartment 8 to recuperate under the care of her physician.

Around August 2015, Defendant Carolyn Smitley[1] became the manager of the Smitley Apartments. Smitley repeatedly entered McGuffin's apartment without notice or permission for the sole purpose of demanding that McGuffin vacate her home. During these visits, Smitley's tone was angry and threatening. Smitley made explicit discriminatory statements to McGuffin calculated to drive McGuffin from her home, such as: "Tammy should have not rented you an apartment in a hospital bed"; "I don't want you living here in a hospital bed"; that McGuffin should be "in a facility" or "in a nursing home" and that she was "too sick to live here."

Smitley also attempted to obtain McGuffin's medical provider contact information to attempt to convince the provider to send McGuffin to a nursing home. Smitley walked into the apartment multiple times to tell McGuffin that she was working to evict her. In September 2015, Smitley refused to accept McGuffin's rent. Smitley then filed an eviction action against McGuffin, citing "nonpayment of rent/living conditions/refusal to leave" as the grounds for eviction.

The Plaintiffs allege that these actions by Smitley violated the Fair Housing Act. They sought compensatory and punitive damages and injunctive relief.

The Plaintiffs filed a Motion for Default Judgment on March 3, 2017. Dkt. No. 39. The Court entered default with regard to Smitley in her individual capacity on January 10, 2018. Dkt. No. 71. The Plaintiffs then filed a Motion for Default Judgment regarding Smitley in her capacity as Trustee of the Smitley Family Trust on January 26, 2018. Dkt. No. 72. The Court entered default against Smitley in that capacity on February 5, 2018. Dkt. No. 73.

---

[1]Smitley is a defendant both in her individual capacity and as trustee of the Smitley Family Trust.

## II.     DISCUSSION

As alleged in the Complaint and established by the entry of default, the Defendants are liable for violations of the Fair Housing Act, under 42 U.S.C. §§ 3601-3617. Under the Fair Housing Act, "if the court finds that a discriminatory housing practice has occurred or is about to occur, the court may award to the plaintiff actual and punitive damages" and injunctive relief "including an order enjoining the defendant from engaging in such practice or ordering such affirmative action as may be appropriate." 42 U.S.C. § 3613(c)(1).

Following entry of default, "the well-pled allegations of the complaint relating to liability are taken as true, but those relating to the amount of damages suffered ordinarily are not." *Wehrs v. Wells*, 688 F.3d 886, 892 (7th Cir. 2012). "[O]nce a default has been established, and thus liability, the plaintiff must establish his entitlement to the relief he seeks." *In re Catt*, 368 F.3d 789, 793 (7th Cir. 2004). Therefore, on proper application by a party for entry of default judgment, the court must conduct an inquiry in order to ascertain the amount of damages with "reasonable certainty." *Id.* At the damages hearing on March 12, 2018, the Plaintiffs presented testimony and introduced evidence in support of their requested damages.[2]

---

[2] Plaintiff Carolyn McGuffin died during the pendency of this lawsuit, and Plaintiff Jessica Carlton was substituted pursuant to Federal Rule of Civil Procedure 25. State law governs the survival of statutory civil rights actions. *See Hutchinson ex rel. Baker v. Spink*, 126 F.3d 895, 898 (7th Cir. 1997) (citation omitted). In Indiana, when a person suffers personal injury caused by another and subsequently dies from causes other than those injuries, the personal representative of the decedent "may maintain an action against the wrongdoer to recover all damages resulting before the date of death from those injuries that the decedent would have been entitled to recover had the decedent lived. The damages inure to the exclusive benefit of the decedent's estate." Ind. Code § 34-9-3-4. The same holds true when the plaintiff dies during the pendency of her lawsuit. Ind. Code § 34-9-3-1. Accordingly, McGuffin's claim survives her death and Carlton, in her capacity as personal representative of the estate of McGuffin, maintains the action against the Defendants.

### A. Compensatory Damages

In Fair Housing Act cases, emotional distress caused by housing discrimination is a compensable injury. *See Seaton v. Sky Realty Co.*, 491 F.2d 634, 636-38 (7th Cir. 1974). "The more inherently degrading or humiliating the defendant's action is, the more reasonable it is to infer that a person would suffer humiliation or distress from that action; consequently, somewhat more conclusory evidence of emotional distress will be acceptable to support an award for emotional distress." *United States v. Ballistrieri*, 981 F.2d 916, 932 (7th Cir. 1992). The evidence presented at the hearing through the testimony of Joseph Gunn, Amy Nelson, Angie Hass and Jessica Carlton, all of whom the Court found credible, established that McGuffin suffered embarrassment, frustration, and emotional distress as a result of Defendants' discriminatory housing practices. The Court finds that compensatory damages in the amount of $25,000.00 for Carlton are appropriate.

A fair housing organization may recover damages caused by diversion of resources. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 n.19 (1982). The Seventh Circuit has characterized diversion of resources damages as equivalent to the "opportunity costs" of pursuing the investigation of the defendant's practices. *Balistrieri*, 981 F.2d at 933. A fair housing organization may also suffer redressable injury to its "non-economic interest in encouraging open housing," or frustration of mission. *Havens Realty Corp.*, 455 U.S. at 368 n.20. The evidence presented at the hearing established that, as a result of the Defendants' discriminatory housing practices, the Fair Housing Center lost staff time spent investigating the Defendants' discrimination and counseling McGuffin about her rights. The evidence presented at the hearing through the testimony of Nelson, whom the Court found credible, established that the Defendants' discrimination also frustrated the Fair Housing Center's mission, which is to ensure equal housing opportunity across central Indiana. The Court finds that the Fair Housing Center

of Central Indiana's actual damages are $11,501.82. This amount includes $5,901.82[3] in damages for diversion of resources and $5,600.00[4] for frustration of mission.

## B. Punitive Damages

Under the Fair Housing Act, punitive damages are appropriate where the defendant acts with "reckless or callous disregard for the plaintiff's rights," or "consciously and intentionally discriminate[s]" against the plaintiff. *Balistrieri*, 981 F.2d at 936. Punitive damages "serve the purpose of punishing the defendant, of teaching him not to do it again, and deterring others from following his example." *Smith v. Wade*, 461 U.S. 30, 56 (1983) (quotation and citation omitted). The evidence presented at the hearing established that the Defendants consciously and intentionally discriminated against McGuffin or, at a minimum, acted with reckless disregard of McGuffin's rights. As such, punitive damages are appropriate. The Court finds that Carlton is entitled to punitive damages at two times compensatory damages, which is $50,000.00. The Court further finds that the Fair Housing Center of Central Indiana is entitled to punitive damages at three times compensatory damages, which is $34,505.46.

## C. Injunctive Relief

Under the FHA, injunctive relief is available pursuant to § 3613(c). That section provides, in relevant part:

> In a civil action under subsection (a) of this section, if the court finds that a discriminatory housing practice has occurred or is about to occur, the court . . . may grant as relief, as the court deems appropriate, any permanent or temporary injunction, temporary restraining order, or other order (including an order

---

[3]Evidence established that time spent by the Fair Housing Center employees included 34.75 hours by Executive Director Amy Nelson at $150.00 per hour and 7.25 hours by Fair Housing Projects Coordinator Brady Ripperger at $90.00 per hour. Other expenses totaled $36.82.

[4]The Fair Housing Center stated that it planned to hold two fair housing trainings at a cost of $1,200.00 each; conduct a mailing about fair housing rights to the neighborhood residents, estimated to be about 400 persons, at a cost of $200.00; and place a billboard using a HUD-approved public service announcement about fair housing rights at a cost of $3,000.00.

enjoining the defendant from engaging in such practice or ordering such affirmative action as may be appropriate).

42 U.S.C. § 3613(c). Injunctive relief is appropriate in this case. The Court orders the following:

1. The Defendants shall not discriminate in any respect in the rental of dwellings.

2. The Defendants shall adopt and implement a written reasonable accommodation and modification policy prohibiting discrimination on the basis of disability in the operation of the subject property and any other residential properties she or the Smitley Family Trust owns.

3. The Defendants shall adopt and implement a written policy prohibiting discrimination on the basis of familial status in the operation of the subject property and any other residential properties Smitley or the Smitley Family Trust owns.

4. The Defendants shall remove the "Adults Only" sign from the subject property and post and maintain a fair housing sign in a form approved by the United States Department of Housing and Urban Development.

### D. Attorney's Fees

In a fair housing action, "the Court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee and costs." 42 U.S.C. § 3613(c)(2). The Plaintiffs are the prevailing party in this action and are therefore entitled to reasonable attorney's fees and costs. To determine a reasonable fee, the court begins by calculating the lodestar–the attorney's reasonable hourly rate multiplied by the number of hours reasonably expended. *Schlacher v. Law Offices of Phillip J. Rotche & Assocs., P.C.*, 574 F.3d 852, 856 (7th Cir. 2009). The district court may then adjust that figure "to reflect various factors including the complexity of the legal issues involved, the degree of success obtained, and the public interest advanced by the litigation." *Id.* at 856-57. The party seeking the fee award bears the burden of proving the reasonableness of the hours worked and the hourly rates claimed. *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 550 (7th Cir. 1999).

Courts are instructed to consider "the prevailing market rates in the relevant community" when called upon to determine a reasonable hourly rate for attorney's fees. *Blum v. Stenson*, 465 U.S. 886, 895 (1984). An attorney's "market rate is the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question." *Bankston v. Illinois*, 60 F.3d 1249, 1256 (7th Cir. 1999) (quotation omitted). The Plaintiffs seek the following hourly rates: Christopher Brancart: $450; Elizabeth Brancart: $450; Thomas Kayes: $225; Thomas Crishon: $250; Melissa Keyes $300; and Legal Assistants: $95. The Court finds that the evidence of record demonstrates that these rates are reasonable.

Based upon review of the declarations and time records submitted by Plaintiffs' counsel, the Court finds that the number of hours spent by the Plaintiffs' counsel is reasonable based on the results obtained and the nature of the litigation. Accordingly, the Court awards the Plaintiffs $95,214.50 in fees, which include $40,199.50 for the work performed by Brancart & Brancart and $55,015.00 for work performed by attorneys at Indiana Disability Rights. Further, the Court has reviewed the costs and expenses sought by Plaintiffs' counsel and, finding them to be reasonably incurred, awards $3,525.97, which represents $3,398.83 in costs and expenses incurred by Brancart & Brancart and $127.14 in costs and expenses incurred by attorneys at Indiana Disability Rights.

### III. CONCLUSION

Given the Court's findings, set forth above, judgment will be entered in this case in favor of the Plaintiffs and against the Defendants. Damages in the amount of $25,000 compensatory damages and $50,000 punitive damages are awarded to Plaintiff Jessica Carlton. Damages in the amount of $11,501.82 compensatory damages and $34,505.46 in punitive damages are awarded to Plaintiff Fair Housing Center of Central Indiana. The Court awards attorney's fees in the amount of $95,214.50 in fees, which include $40,199.50 for the work performed by Brancart &

Brancart and $55,015.00 for work performed by attorneys at Indiana Disability Rights. Further, the Court has reviewed the costs and expenses sought by Plaintiffs' counsel and, finding them to be reasonably incurred, awards $3,525.97, which represents $3,398.83 in costs and expenses incurred by Brancart & Brancart and $127.14 in costs and expenses incurred by attorneys at Indiana Disability Rights. The Court also orders injunctive relief as set forth above.

SO ORDERED: 7/3/18

_William T Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

**Copy by United State Mail to:**

**Carolyn Smitley**
**7309 S. Arlington Ave.**
**Indianapolis, IN  46237**


Copies to all counsel of record via electronic notification